## The COMMONWEALTH *v.* N. HOLMES & SON.

1. An exchange-broker, licensed under the act of 27th May, 1841, who buys notes, drafts, acceptances, and other securities in the nature thereof, with his own funds and not to sell again, is not subject to the tax or penalty imposed by that act upon such as follow the business of a bill-broker without a specific license therefor.
2. The term "bill-broker" used in that act is synonymous with the term "street-broker," as it is used in the commercial cities.
3. The act of 27th May, 1841, is penal and to be construed strictly.

ERROR to the District Court of Allegheny.

This was an amicable action in debt, in which the question raised by the case stated was, whether the defendants, Holmes & Son, who were licensed as exchange-brokers, under § 2, act 27th May, 1841, and who were in the habit of purchasing with their own funds, notes, drafts, acceptances, and other securities in the nature thereof, maturing or made payable at a future day, *but did not sell the same*, were subject to the tax or penalty imposed by that act upon such as follow the occupation and business of a bill-broker, without a specific license therefor. The court below entered judgment for the defendants.

Mr. *Attorney-General*, for the Commonwealth.—In the act of 1841 there are three kinds of brokers recognised, and a license is required to be taken out in order to pursue either branch of the business. The word "broker" is not used technically, or in its legal sense, in the act. The act defines for itself. If, under the general words of § 2, an exchange-broker may purchase notes, drafts, and acceptances, § 3, which regulates bill-brokers, will be nullified. The same general words, "other securities in the nature thereof," are used in each section, defining the business of each class. The legislature intended each branch of the business to be distinct, allowing one to take out a commission to pursue all or either of them, subject to a distinct tax on each branch pursued. This is provided in § 4, with which any construction allowing exchange-brokers to purchase notes, &c., would conflict.

Section 24, act 24 March, 1842, Dunlop, 856, defines exchange-brokers within the meaning of the previous act of 1841, as those

who *engage in or pursue the business* of purchasing or selling the bills, &c., of any authorized corporation, &c., but does not enumerate notes of hand or acceptances. It was designed to exempt those who do *not* engage in, &c., the business of an exchange-broker from liability as such. The right to deal in notes of hand nowhere appears, but in § 3 of the act of 1841, regulating bill-brokers.

The words of § 3 are "purchase *and* sell," and the defendants only purchase. Hence it will be said they are not liable under that section. But penal statutes must not be construed so strictly as to defeat their intent: U. S. *v.* Miltenberger, 5 Wheaton, 76. In fact, bill-brokers do not purchase at all: they sell notes for third persons, and receive a commission therefor. Under a strict construction, then, a license would not be necessary.

To effectuate the intent of the law-maker, *and* will be construed to mean *or*, and *or* to mean *and:* 1 Vent. 62; Foster *v.* Comm. 8 W. & S. 79.

*Williams*, contrà.—The act of 1842 does not impair the authority of an exchange-broker to do and perform all lawful things incident to his business. What is the meaning of the term exchange-broker? and what is the usual and legitimate business of that class?

A broker is "an agent or negotiator, employed by merchants to transact business," according to Webster; and the technical meaning is of the same import: Story's Agency, § 28; C. J. Tindal, 6 Bing. 702; 2 Kent's Com. 622 n. The books speak of *exchange and money* brokers, *stock* brokers, and *merchandise* brokers. Buying and selling bills of exchange and *promissory notes* is described, Story, § 32, as the proper business of the first class. This case, if it is one of brokerage, falls within the general power conferred by § 2, act of 1841.

But in § 3, there is a new class, *bill-brokers*, created. The definition of this class is not precise. Doubtless "notes of hand" was intended to mean promissory notes, and perhaps more, and "drafts and acceptances" are referable to "bills of exchange, whether foreign or domestic." Thus this class embraces the business of another to some extent; and yet it will scarcely be pretended that an exchange-broker under § 2, would be required to take out a license under § 3, to sell and buy bills of exchange.

If there is a class distinct from exchange and money-brokers, not heretofore regarded as belonging to them, to whom the description of bill-brokers can be applied, it must be applied to that class.

2 R

Now there is such a class known by the very name, but more commonly as " street-brokers," who hawk about paper, and negotiate its sale. They are generally without fixed places of business, frequently without any ostensible vocation, vagrant and migratory in their habits, but brokers in the strictest sense. It was intended to reach these, without abridging the right and business of the more regular traders.

But this is not a case of brokerage at all. We buy for our own use, with our own means, and not as agents. We do not sell what we buy, and unless the word " and" can here be construed to mean *or*, we are not liable. The construction must be strict, for the act is penal.

The opinion of this court was delivered by

COULTER, J.—The legislature, in the imposition of taxes upon trades, professions, and employments, have an eye more to the aspect and demarcation of business, apparent to and known by the eye of the world, than to nice verbal distinctions. The first section of the act of 1841 contemplates a class and imposes a tax upon them, under the designation of *stock-brokers*. This class is well known to all business men, and their business is to buy and sell all kinds of public stock or loans, as the agents of other persons, for a commission.

The second section imposes a tax upon another class, called in the law exchange-brokers. This class is also well known to the business community. And the nature of their business operations is also well defined and described in the section, to be that of buying and selling " the bills, notes, or other legal obligations of any authorized corporation or company, domestic and foreign bills of exchange, and other securities in the nature thereof (public loans and stocks excepted)." This is the class to which the defendant admits himself to belong.

The third section imposes a tax upon a third class, called in the act " bill-brokers." A class not so well known in the country as it is in the city of Philadelphia, and other great commercial cities, where they are often called " street-brokers," and are the agents and go-betweens of others, whereby the discount of bills in the street for an enormous usury is effected, and for this they receive a regular commission. I have often noticed in the papers the rate of interest on the bills sold in the street to be $2\frac{1}{2}$ and more per cent. a month. These brokers have offices, but when bills or notes are put into their hands to sell, they traverse the streets in pursuit

of purchasers, and from their experience they generally know where to find them. The business as described in the act is to *buy and sell* notes of hand, drafts, acceptances, and other securities in the nature thereof, maturing and made payable at a future time. By the provisions of the act, these different branches or classes of tradesmen are not incompatible ; any one may take out a license, or rather licenses, to pursue each distinct branch ; and if an individual, who had a license to follow one, should clandestinely follow the other, he would doubtless be subject to the penalty. These classes are as well known to, and their distinctive business as well defined in the minds of business men, as they were to the mind of the legislature.

It is admitted in this case that Holmes & Co. buy, with their own funds, notes of hand, drafts, acceptances, and other securities, maturing at a future period, but do not *sell* the same. This, however, is doing nothing more than hundreds of people do all over the Commonwealth : that is, buy with their own funds notes and bonds, payable at a future time, or presently due, at such discount as may be agreed upon, and either hold them as a good investment, or collect them when due.

The only mode in which this operation is taxable, is to make the purchaser of the bonds or notes pay a tax for so much money on interest; and in this shape, I presume, Holmes & Co. pay the tax, for the operation is not covered by their public avocation of exchange-broker, because the proper and legal signification of brokers is that given by Tindal, C. J., 6 Bingham, 702 : " a broker is one who makes a bargain for another, and receives a commission for the same." And the operation does not come within the meaning of the term exchange-broker, as used in the 2d section, that contemplates a selling as well as buying.

But it is clear that the defendants are not liable to the penalty under the third section, because they do not buy *and sell* bills, notes, &c., for a commission. The selling is as essential an ingredient in the description of the occupation as the buying. And the statute being a penal statute, must be construed strictly. Besides, there is a different and distinct class embraced, and intended to be embraced by the third section of the act, that is, bill-brokers or street-brokers, who buy and sell notes, bills, &c., payable at a future time, as the agents or factors of others, for a commission; such are strictly bill-brokers, as denominated in the act, and to that class the defendants do not belong.

Judgment affirmed.